LUCEDALE AUTOMOBILE CO. *et al. v.* DAUGHDRILL.

(Division B. Sept. 30, 1929.)

[123 So. 871. No. 27981.]

*O. F. Moss,* of Lucedale, for appellant.

*E. W. Breland,* of Leakesville, for appellee.

ANDERSON, J., delivered the opinion of the court.

Appellee brought this action in the court of a justice of the peace of George county to recover from appellants the value of a mule belonging to appellee, alleged to have been negligently killed by appellants, by means of an automobile belonging to appellant Lucedale Automobile Company, and operated by its agent, appellant W. H. Fagan, and recovered a judgment for the amount sued for, two hundred dollars. From that judgment appellants prosecuted an appeal to the circuit court of George county, where there was a trial, resulting again in a judgment in favor of the appellee in the sum of two hundred dollars. From that judgment, appellants prosecute this appeal.

In June, 1927, the appellant Fagan, while driving a Ford car belonging to the appellant the Lucedale Automobile Company, through the village of Leaf in Greene county, struck a mule belonging to the appellee, and killed it. Fagan was, at the time, an employee of the Automobile Company, and engaged about the business of his principal. Leaf is an unincorporated village, situated on a railroad, and has a railroad station. The

mule was struck and killed in the nighttime, while Fagan was driving south through the village, and his evidence as to the facts and circumstances of the killing of the mule was without substantial dispute. According to his evidence, he was driving at a rate of from fifteen to thirty miles an hour when the mule suddenly ran out something like ten feet in front of the automobile. Fagan applied his brakes, and tried to stop the car, but failed to do so. The mule was struck with great violence—so great that its head and neck came in contact with, and broke, the windshield of the car. Fagan was unable to see the mule until it appeared in front of the car, and he testified that it was impossible for him to stop the car before striking the mule. The north and south public highway through the village of Leaf is built up in the following manner: Entering the village from the north, the first building is a filling station; forty feet south of that is a residence; ten feet south of that is a building referred to in the evidence as a "shack;" one hundred and eighty-five feet south of that is the railroad depot; seventy-two feet south of that is a store, where a mercantile business is carried on; seventy-five feet south of that is a warehouse; thirty-five feet south of that is a privy.

Appellants contend that the court erred in refusing to direct a verdict in their favor. The basis of that contention is that, when Fagan first saw the mule appear in the road in front of the car, he was not exceeding a speed of thirty miles an hour; that on the highway at the place where the mule was killed he was permitted by law to make a maximum speed of thirty miles an hour; that, therefore, immediately before and at the time the mule was killed, he was running at a lawful rate of speed, and that at the time he first saw the mule appear in front of the car it was then impossible for him to stop the car before striking the mule.

The motor car speed statute, section 2, chapter 116, Laws of 1916 (Hemingway's Code 1927, section 6680), provides as follows: "Or in any event on any public highway where the territory contiguous thereto is closely built up, at a greater rate of speed than fifteen miles per hour, or elsewhere in any incorporated city, town or village at a greater rate of speed than fifteen miles per hour, or elsewhere outside of any incorporated city, town or village at a greater rate of speed than thirty miles per hour, subject, however, to the other provisions of this act."

It will be observed from the statute that the maximum rate of speed allowed on any highway, whether in a municipality or in the country, "where the territory contiguous thereto is closely built up," is fifteen miles per hour. We think a highway running through a village, whether incorporated or not, where there is a railroad and a railroad depot, and as many buildings along the highway as the evidence shows there are in the village of Leaf, comes within the definition of a "public highway where the territory contiguous thereto is closely built up," and therefore, under the statute, the maximum rate of speed for motor vehicles through such a village is fifteen miles per hour.

The last clause of section 12 of chapter 116, Laws of 1916 (Hemingway's Code 1927, section 6690), provides as follows: "And in any action brought to recover any damages, either to person or property, caused by running or operating such motor vehicle in violation of any of the provisions of this act, the plaintiff or plaintiffs shall be deemed to have made out a *prima-facie* case by showing the fact of such injury, and that such person or persons operating, or causing to be run or operated, such motor vehicle, was at the time of the injury running or operating, or causing the said motor vehicle to be run or operated in a manner contrary to the provisions of this act."

There was sufficient evidence to go to the jury on the question whether Fagan, immediately before the appearance of the mule in front of the car, was driving at a greater rate of speed than fifteen miles an hour. He himself testified that his speed was from fifteen to thirty miles per hour. As stated, the mule was struck with great force; its head and neck came in contact with the windshield of the car and broke it. The jury would have been justified in finding, and probably did find, that if Fagan had not been violating the speed limit the mule would not have been struck with such force.

Under the last statute above referred to, the violation by Fagan of the speed limit, and the killing of the mule, made out a *prima-facie* case of negligence on the part of appellants. Appellants argue, however, that the *prima-facie* case of negligence was overcome by the undisputed evidence. We do not think so. We think it reasonably inferable from the evidence, direct and circumstantial, that Fagan was running his car at a speed of not less than thirty miles an hour, and probably more, and that such speed was the proximate cause of the killing of the mule; that, if his speed had been as little as fifteen miles an hour, the mule might not have been struck.

Appellants complain that the instructions given appellee did not inform the jury that the speed of the car must have been the proximate cause of the striking and killing of the mule. It is true that none of appellees' instructions use the language "proximate cause;" nevertheless they plainly informed the jury that, if the evidence showed that the car was being driven at an unlawful speed, "and as a result thereof" (as set out in one charge), or "by reason of such unlawful speed" (as set out in another charge), the mule was struck and killed, they should return a verdict for the appellee. We think the language used in the instructions is equivalent in

meaning to ''proximate cause.'' To the 'ordinary understanding, to say that one thing happened as a result of another, or that one thing brought about another —which is the same thing—means that the first is the proximate cause of the second.

We see no merit in the other questions argued, and do not think they are of sufficient seriousness to call for a discussion by the court.

*Affirmed.*