## HERMAN HALE LUMBER CO. v. BELSER.*

### No. 9437.

Court of Civil Appeals of Texas. Galveston.
May 22, 1930.

Rehearing Denied June 19, 1930.

King, Wood & Morrow, of Houston, for appellant.

Fouts, Amerman, Patterson & Moore, of Houston, for appellee.

LANE, J.

L. M. Belser, Jr., brought this suit against Herman Hale Lumber Company to recover for personal injuries alleged to have been suffered by him while he was driving an automobile on and along the public highway between the cities of Houston and Hempstead.

The plaintiff alleged, and the undisputed evidence shows, that he, while driving his car on the right-hand side of the highway going to the city of Houston shortly after dark, ran into the trailer attached to a truck belonging to defendant, which had been left standing on the highway, without lights or guards, in such a position as to block traffic proceeding on the right-hand side of the road when going towards Houston.

Plaintiff also alleged that as a result of the collision he suffered injuries to his nervous system which will be continuous; that he suffered a laceration of his eyelids which has permanently scarred and disfigured him; that the tissues on the outside of his eyelids by reason of such injury give him constant inconvenience and pain and a sensation of a foreign body under the eyelid; that by reason of such collision he lost his automobile of the value of $1,788, incurred medical expenses of $345.75, and miscellaneous expenses in the sum of $100; that, by reason of the loss of the items named and the personal injuries suffered by him, he was entitled to a recovery of a total sum of $50,000.

Defendant answered by a general denial and by averments that the plaintiff was guilty of negligence which contributed to the injuries complained of by him, in that plaintiff was at the time of the collision operating his car at an excessive, high, unlawful, and dangerous rate of speed while his vision of the road ahead of him was obscured and impaired by headlights of cars which were approaching him from the opposite direction to which he was going; that at such time plaintiff failed to have his car under control, which prevented him from stopping the same before colliding with objects appearing in his course; and that at such time plaintiff was operating his car without then having command of his faculty of sight, sense of distance, and power of locomotion, or, if he had such faculty, sense, and power, he failed to use the same.

The cause was tried before a jury upon special issues submitted by the court, in answer to which they found: (1) That the defendant was negligent in not having his truck or trailer lighted at the time of the collision, and that such negligence was a proximate cause of the collision and of plaintiff's damage; (2) that defendant was negligent in not placing a guard to protect traffic that might be passing the truck and trailer, and that such negligence was a proximate cause of the collision; (3) that the truck was left in such position that it might reasonably be calculated to interfere with traffic proceeding toward Houston, and that such act on the part of defendant was negligence and a proximate cause of the collision; (4) that plaintiff's vision of the road ahead of him was impaired at the time of the collision by lights from an approaching car; (5) that plaintiff was not guilty of negligence in operating his car at the speed it was being operated when his vision was impaired by the lights of the car approaching him; (6) that the plaintiff's car, at the time and immediately preceding the collision was not passing another motor vehicle being drawn in the opposite direction; (7) that plaintiff did not fail to exercise ordinary

---

*Writ of error granted.

care to keep a reasonable lookout for the existence of objects on or near the highway; (8) that plaintiff was not, at the time of the collision, operating his car in excess of 35 miles per hour; (9) that at the time of the collision plaintiff had his car equipped with adequate and proper headlights; (10) that plaintiff at the time in question was not passing or attempting to pass another car then traveling on the highway; (11) that plaintiff at the time in question was blinded by the headlights of another car approaching from the opposite direction in which he was traveling, but a person in the exercise of ordinary care under such circumstances would not have stopped his car; (12) that plaintiff did not fail to reduce the speed of his car after his vision became impaired; (13) that, taking into consideration the physical pain and mental suffering suffered by plaintiff from the time of his injury to date of the trial, such physical pain and mental suffering that he will reasonably suffer in the future, his diminished capacity to work and earn money from the time of his injury to date of trial, and in the future after the trial, the reasonable value of necessary hospital and medical bills incurred as a result of his injuries, the difference in the market value of plaintiff's car immediately before and immediately after the collision, they find that $9,545.75, if paid at the time of trial, would fairly and reasonably compensate the plaintiff for the injuries suffered by him as a direct and proximate result of the collision.

By "special issue No. 11," the jury was asked whether or not at the time and immediately before the collision the plaintiff's car was passing another car then on the highway coming in the opposite direction, to which question the jury answered "No."

"Special Issue No. 12" was as follows: "If you have answered the preceding issue (No. 11) in the affirmative, and only in that event, then answer: Was the plaintiff, L. M. Belser, at the time he was passing another vehicle, operating his automobile at a speed in excess of fifteen miles per hour?" To which question the jury made no answer, as they had answered No. 11 in the negative, nor did they answer Nos. 13 and 14, by which inquiry was made as to whether or not the driving of the plaintiff's car at a rate over 15 miles per hour was negligence and a proximate cause of the collision.

Upon the verdict the court rendered judgment for the plaintiff for $9,545.75, and from such judgment the defendant has appealed.

By appellant's propositions Nos. 1, 2, and 3 it is insisted, in effect, that, in view of the fact that it was shown by the undisputed evidence that, at the time of the collision which resulted in appellee's injury, appellee was driving his car at night along the highway at a speed of from 25 to 28 miles per hour, at which time the reflection of approaching car lights had the effect to obscure or impair his sight of the road ahead of him as such approaching cars passed him, and that, while his sight was so obscured or impaired he failed to diminish his speed, but drove his car past such approaching cars and into the back of appellant's truck, which was standing on the highway ahead of him, notwithstanding that by article 794 of the Penal Code of this state of 1925, it is provided that "all operators of motor vehicles in passing each other on the public highways shall slow down their speed to fifteen miles per hour," which provides a penalty for its violation, the court erred in not holding that appellee was guilty of negligence as a matter of law, and in not so instructing the jury, and in not requiring the jury to find whether or not such negligence was a proximate cause of the collision which, concurring with the negligence of appellant, resulted in the injury of appellee of which he complains.

We agree with appellant that the undisputed evidence shows the facts as stated in his contention, but, in the absence of a finding of the jury that the speed at which appellee drove his car along the highway under the attending circumstances, though in excess of the speed limit of 15 miles per hour when passing other motor vehicles, as fixed by law, was a proximate cause contributing to the collision, we are not prepared to hold that the court erred in not instructing a verdict in appellant's favor.

We find, however, as contended by appellant, that the undisputed evidence of both appellee, who was driving his car, and E. P. Toney, who was in the car with him, shows that for a mile or more just before the collision occurred appellee was driving his car at a rate of speed of not less than 18 miles per hour and up to the time he struck the truck he had not reduced such speed below the rate mentioned; that the undisputed evidence also shows that, at the time of the collision, and immediately preceding the same, plaintiff's car was passing another motor vehicle going in an opposite direction on the highway at a rate of speed in excess of 15 miles per hour in violation of the statute.

Appellee testified: "At the time I hit the truck I came to a dead stop, but I was making I would say between twenty-five and twenty-eight miles an hour when I hit the truck. I hadn't checked my speed or raised my speed any in probably a mile; I had been running at about that gait. I had been running around thirty-five or forty miles an hour earlier in the day, but as soon as the dark came on the lights blinded me, and your pavement is different from ours in our country. At night the lights on our roads cast a white reflection, and this asphalt—I guess you call it—is black at night and the lights shining upon this blinded me, and I checked my speed to around thirty miles, and had met three or four cars just a few minutes before I hit this truck and had slowed down momentarily at that time and run along probably for a mile at between twenty-five and twenty-eight miles an hour.

I saw this truck, you might say, just momentarily, just the instant I hit it. I met one car just before I had the wreck and there was one just had passed me and one even with me when I hit; that was three cars right along there together when I hit the truck."

Again he said: "I never reduced my speed at all on account of the truck, I didn't know the truck was there; when I came in contact with this truck I would say I was running not over twenty-eight miles an hour and not under twenty-five. I had probably been driving at that rate of speed for probably a mile, to the best of my recollection. I could not say how many cars I passed within that mile; I would say approximately seventy-five."

Again: "I saw the truck, you might say, just momentarily, just the instant I hit it. I met one car just before I had the wreck and there was one just had passed me and one even with me when I hit; that was three cars right along there together when I hit the truck."

E. P. Toney testified: "I know approximately the rate of speed at which the automobile was being operated just prior to the time of the collision; it was from eighteen to twenty-five miles an hour."

H. J. Clark, testifying for appellee, said: "I saw the collision; I, was just about a car length from the truck that was struck—past the truck, beyond it from toward Houston. The truck was facing toward Houston and I was going away from Houston, and the other car that was involved in the collision was coming toward Houston; we were meeting each other, and I was meeting and passing the truck from its front. I believe as he hit the truck I was coming right along by him—by the fellow that hit the truck. As the truck and automobile collided I was practically opposite."

Had the court instructed the jury, as he should have done, that appellee in driving his car along the highway while passing other motor vehicles at a rate of speed in excess of 15 miles per hour was negligent, and had then submitted to and required the jury to answer whether or not the driving of appellee's car at such speed while passing other cars was a proximate cause of the collision which, concurring with appellant's negligence contributed to appellee's injury, and had the jury found that such speed was a proximate cause of such collision and injury, appellant would have been entitled to a judgment in its favor.

■■ The undisputed evidence showing that appellee while passing another motor vehicle was driving his car at a rate of speed in excess of 15 miles per hour at the time of the collision, in violation of article 794 of the Penal Code of this state, convicts him of negligence as a matter of law, and nothing remained for the determination of the jury except as to whether or not such negligence at such time and place and under the attending circumstances was a proximate cause of the collision which, concurring with the negligence of appellant, resulted in appellee's injury. West Texas Coaches v. Madi (Tex. Civ. App.) 15 S.W.(2d) 170, 174; Moss v. Koetter (Tex. Civ. App.) 249 S. W. 259; Carvel v. Kusel (Tex. Civ. App.) 205 S. W. 941; Flores v. Garcia (Tex. Civ. App.) 226 S. W. 743.

■ The failure of the court to instruct the jury that appellee was guilty of negligence in the particulars above mentioned and his submitting the question to the jury for their determination and to follow such submission with an instruction that, should they answer that appellee was not guilty in such particulars they need not answer the inquiry as to whether such negligence was a proximate cause of the collision, etc., in our opinion constitutes reversible error.

Appellant has assigned other proceedings and acts of the trial court as constituting reversible error, but, as the judgment must be reversed upon the grounds above stated, and as the other errors complained of will not likely occur upon another trial, it will not be necessary to discuss such assignments.

For the reasons pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

GRAVES, J. (concurring on rehearing).

I have acquiesced in the respective judgments remanding this cause and overruling the appellee's motion for rehearing, but on neither occasion in the reasons for that action as expressed in the court's original opinion; while I think appellee's own speed did then so appear to have been faster than 15 miles per hour, I cannot affirm the undisputed evidence to also show that he was at the time of the collision engaged at all in passing another automobile going in the opposite direction; and, if it did not, of course the violation of Penal Code, art. 794, was not shown as a matter of law.

This statute, being a penal one, should be as strictly construed in appellee's favor as against him, and its plain terms only denounce as an offense the actual passing of such another car without slowing down to 15 miles per hour.

The only car pointed to by any specific evidence—other, possibly, than the statements quoted in the court's former opinion herein from the appellee himself—as having been thus approaching his at the time of the collision, was the Clark car; indeed, appellant did not contend otherwise under its fourth proposition making this claim, insisting that the undisputed proof did show that he was then passing the Clark car. True it further suggested in argument, "It is possible that the Clark car was in fact passing the truck just as Belser struck it, and that *another* car passed him 'just' before the crash," but, as

stated, no evidence was cited indicating the presence at the moment of a third car, unless it be the appellee's general statements this court relied upon. He negatived that inference, however, by other testimony, not quoted, to this effect: "Just immediately prior to the accident two cars passed me going in the opposite direction; in other words, they were going from Houston and I was coming toward Houston. That happened just before I struck the truck. We would have passed the third car if I hadn't hit the truck; I hit the truck and it went by, and our lights were probably together, something near that, at the time of the accident. Two cars had passed me at that time, and I would say that by the time I hit the truck they would have been a quarter of a mile on east, or west, whichever it might be, from me. Those two cars were in ordinary driving distance from each other—probably two hundred feet between them, and I would judge that the first one would prabably be eight hundred or a thousand feet, which is in the neighborhood of a quarter of a mile, from the scene of the accident. I would think there was about two hundred feet, space between each of those three cars, and they all had lights on them, and I had lights."

On the same point the witness Toney, who was riding with him at the time, testified, "I do not think that we were in the act of passing a car at the time this accident happened"; while as affecting the contemporaneous position of her car, Mrs. Clark said: "I don't think that we had passed the truck when the crash took place, but I think we heard the crash as we got to the truck, and we were just about even with the truck when we heard the crash. Just as we approached the truck I imagine we heard the crash. We had not passed the truck when the collision took place. I think we were just by the side of it, just getting to it, when we heard the crash and we stopped as soon as we could, and got out."

So that, upon the whole, it seems to me an issue of fact was raised as to whether the appellee was actually engaged in passing another car at the time of the collision within the meaning of article 794, supra, wherefore the learned trial court would not have been at liberty to peremptorily charge the jury to the contrary.

But while so holding, I further conclude —taking and appraising all the evidence, both direct and circumstantial, inclusive of what seems to me the disputably established speed on appellee's part of more than 15 miles per hour at and for about a mile before reaching the place of impact, as well as his own first admission that he was then passing another car—that the jury's finding under special issue No. 11 was against the weight of the evidence to the extent that it should not be permitted to stand; appellant's fifth proposition and underlying assignment raised this protest, which in my opinion should have been sustained, rather than the one that was upheld.

While its outlines are often difficult of practical demarkation, the judge-made law of Texas has created such a twilight zone as there being in a given case enough evidence to raise an issue of fact for a jury, and yet not enough in the exercise of the court's conscience to properly support a verdict thereon. This cause seems to me to present an example of that sort.