## H. W. BASS DRILLING CO. v. RAY.
### No. 1724.

Circuit Court of Appeals, Tenth Circuit.
Jan. 27, 1939.

L. O. Fullen, of Roswell, N. M., for appellant.

Caswell S. Neal, of Carlsbad, N. M. (C. M. Neal, of Hobbs, N. M., on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

This action was instituted by Mrs. Debs Ray, administratrix of the estate of Vernon Debs Ray, her husband, who died intestate, as plaintiff, to recover damages for his death against H. W. Bass Drilling Company, as defendants, on account of injuries occurring on October 31, 1936, in an automobile accident occasioned by its negligence. Judgment was rendered on verdict in favor of plaintiff, from which an appeal was duly prosecuted.

The parties will be referred to in the order in which they appeared in the trial court, the appellant as "defendant," and the appellee as "plaintiff."

Defendant, in its answer, among other things pleaded contributory negligence on part of plaintiff's intestate.

Plaintiff's intestate was employed by Younger Brothers, teaming and trucking contractors. He had been a truck driver. At the time of his death he was engaged in digging a slush pit near Oil Center, New Mexico. In performing his duties he drove a Ford pickup truck. On the evening of October 31, 1936, he left the camp where he lived in the pickup with the lights on to get some men who were working at the slush pit. He was traveling in a westerly direction on the road between Eunice and Monument. Defendant's truck in charge of Westmoreland, as driver, was stopped across and in the road on which plaintiff's intestate was traveling. The truck extended 38 feet from the north line of the road, leaving a clearance of 28 feet of roadway. The truck was loaded with oil well pipe which rested on the trailer attached thereto and which extended 30 feet from the rear of the truck. The headlights of the truck were burning and threw a light to the south across the intervening 28 feet of roadway. The driver had stopped the truck to load a kelly which is a square joint of pipe used in drilling oil wells, and to reboom the load. The pickup being driven by

plaintiff's intestate collided with the truck, and plaintiff's intestate suffered injuries as a result of the collision, from which he died. The truck had been stopped in the road at least one and one-half minutes before the collision occurred.

Wooten was employed by the defendant as a watchman at a drilling rig on a lease near the point where the accident occurred. Prior to and at the time of the accident he was seated in an automobile about 40 to 50 feet from the point where the collision occurred. He first observed plaintiff's intestate approaching in the pickup about a quarter of a mile away and observed him until the collision occurred. He testified that he had driven automobiles since 1916; that in his opinion plaintiff's intestate was traveling at a speed of 60 miles an hour until he reached a point about 57 yards from the truck, when he applied his brakes to the pickup; that he drove straight into the truck after applying the brakes; that at the time of the collision in his opinion the pickup was traveling at a speed of 40 miles an hour. He admitted that he did not hear the noise of the pickup motor.

John Dyson lived at Monument. On the night of the accident he and his wife were traveling westerly on the road in an automobile at a speed of from 20 to 25 miles an hour. At a distance of 30 or 40 yards from the truck, Mrs. Dyson called her husband's attention to the lights of the truck. He slowed down and stopped toward the rear of the truck on the right side of the road. They observed a man on top of the truck booming the load. They saw no lights on the truck except the headlight and no flares in the road. It was about six-thirty when they reached the truck and fully dark. They turned out and passed the truck on the left side of the road. This was all prior to the accident. Dyson testified respecting the condition of the road and that he did not think it possible for one to travel thereon at a very high rate of speed.

On the night of the accident, Sam Weaver, who lived at Monument and worked at Eunice, was traveling westerly on the highway. He saw the Dysons about a mile west of Eunice and stopped and talked to them. The Dysons left about three to five minutes ahead of him. He did not pass them on the road. As he approached the defendant's truck he saw the headlights across the road and observed the pickup which had run under the pipe. He was

traveling from 10 to 25 miles per hour. He saw no one at the point of the accident. It was fully dark. The color of the highway at the point of the collision was reddish or rusty, and similar to the color of the pipe.

Westmoreland, defendant's truck driver, testified that he and Williams, his helper, on the night of the accident went to the rig location about 75 feet north of the highway and put a load of pipe on the truck; that they then pulled out into the road and stopped; that Williams called him to bring the boomer; that he got out of the truck, secured the boomer, and took it back to Williams; that after he handed the boomer to Williams the latter told him he had better put out the flares, as it might take longer to boom the load than he expected; that just as he turned around to get the flares, the pickup hit defendant's truck; that the flares were on the side of the truck where the collision occurred; that Williams was at the back end of defendant's truck when he handed him the boomer, and he returned to get the flares; that a boomer is about two feet long, weighs about five pounds, and is used to tie down the load with chains; that he had boomed down the load before they left the location; that the headlights, clearance lights, cab lights, and taillights were burning at the time of the collision; that he did not observe the pickup approaching; that Wooten, the watchman, assisted him and Williams in pulling the pickup from under the load; that they took plaintiff's intestate to the hospital at Hobbs, and later returned to the scene of the accident; that neither he nor Williams had gotten on top of the load immediately prior to the accident; that the first booming is not sufficient; that it is necessary to retighten the chains; that he stopped on the highway to reboom the load and to load the kelly on the trailer; that the clearance lights could be seen clearly at a distance of 500 feet; that he did not observe the Dysons pass defendant's truck; that he put out the flares after the accident.

Williams, the helper, testified to substantially the same facts as Westmoreland.

Kerley, sheriff of Lea County, testified that he was familiar with the place where the collision occurred; that there was no reason why the load could not have been boomed at the original point of loading, and that it was not necessary to boom the load while the truck was standing on the highway.

Jack Edwards, a witness for the defendant, testified that he had been connected with the traffic department of the city of Roswell for a period of 15 years, and had had occasion to check on the speed of automobiles, and to judge the distance within which an automobile could be stopped at given speeds by application of the brakes. He testified that the danger zone of an automobile traveling 30 miles an hour is 82 feet, 40 miles an hour 132 feet, 50 miles an hour 192 feet, and 60 miles an hour 264 feet; that with an allowance of half a second for reaction, an automobile traveling 40 miles an hour can be stopped within 117 feet, 50 miles an hour 174 feet, and 60 miles an hour 242 feet; that in his opinion, based on the testimony of the witnesses, the road on which plaintiff's intestate was traveling was not a good braking road, and that it would require longer to stop an automobile on that road.

A witness for the plaintiff testified that the pickup was a Ford truck and was being used for trucking purposes in the oil fields —for hauling oil and oil field tools.

The jury returned a verdict in plaintiff's favor, and answered "No" to the special interrogatory submitted by the court in connection with the instructions to the jury.

The court gave instruction No. 8 and refused to give No. 11, the defendant saving an exception as to each, the latter, requested by defendant, being as follows:

"You are instructed that at the time of the collision and accident complained of, to-wit: October 31, 1936, there was in full force and effect in the State of New Mexico a safety statute, Chapter 118 of the Laws of 1933 (section 1, sub-section b), which provided as follows:

" 'Maximum Speed. No bus or truck shall be operated at a speed greater than forty-five miles per hour. Passenger automobiles may be operated at such speed as shall be consistent at all times with safety and the proper use of the roads'."

"And in connection with this statute I charge you that if you find from a preponderance of the evidence that the deceased, Vernon Debs Ray, at the time of the accident, was operating his truck in excess of forty-five miles per hour, this fact, if it was a fact, is negligence per se, that is, negligence of itself; and you are instructed that if you further find that such negligence, if any, contributed to and was a proximate cause or one of the proximate causes of the death of the deceased, then the plaintiff cannot recover and your verdict will be for the defendant."

Said instruction No. 8, given (not requested by defendant, and to the giving of same defendant saved an exception), is as follows:

"You are instructed that there is some testimony in this case that just prior to, and at the time of the accident, the deceased was driving the car in which he was riding at an excessive rate of speed.

"There is no law in the statute books of this state prescribing the speed at which a pickup[1] truck shall run on the roads of the State, or on the general highways, like the place where this accident occurred. However, there is just as much duty imposed upon the deceased to exercise reasonable care while on the roads as for the defendant company in operating its trucks and while the law does not make excessive speed negligence under certain circumstances, it may be negligence. That is a question for you to determine.

"If you find from a preponderance of the testimony that deceased was driving at an excessive rate of speed, whether under such circumstances it was negligence upon his part or not, or whether such speed caused or contributed to his death, is a question for you to determine. You can readily see that on certain roads, under certain conditions, a speed of sixty miles per hour might not be negligence, while on certain other roads, and under other conditions, such speed would constitute negligence. You must apply the rule or definition the Court gave you of negligence, or of ordinary care, to say whether or not the deceased was guilty of negligence which caused or contributed to his injury. The definition the Court gave you is how the deceased would be expected to act as a reasonably prudent person would act under similar circumstances. If he did act as a reasonably prudent person, it would not be negligence. If he did not act as a reasonably prudent person would act under

1 Thayer v. Denver & R. G. R. Co., 21 N.M. 330, 154 P. 691; Kaolatype Engraving Co. v. Hoke, C.C.Mo., 30 F. 444, 446; Werk v. Parker, 249 U.S. 130, 39 S.Ct. 197, 63 L.Ed. 514; Town of North Hempstead v. Gregory, 53 App.Div. 350, 65 N.Y.S. 867; 23 C.J. p. 60.

similar circumstances it would be negligence."

The court refused to submit with his instructions to the jury defendant's requested interrogatory, exception being saved as to such refusal, which was as follows: "Was the deceased, Vernon Debs Ray, at the time of the collision with defendant's truck, driving his truck at a speed in excess of 45 miles per hour?"

■ Defendant having interposed an affirmative defense of contributory negligence, it was essential for it to prove same.

The jury found by its general verdict that defendant was guilty of primary negligence and by its answer to the interrogatory submitted that the speed at which intestate was driving did not contribute as a proximate cause to the collision and his resulting death.

Section 11-401, New Mexico Annotated Statutes, 1929 (New Mexico Supplement 1938, page 82, Section 11-804 [b]), under Title II, Operation of Vehicles—Rules of the Road—is as follows:

"Speed. (a) * * *

"(b) Maximum speed. No bus or truck shall be operated at a speed greater than 45 miles per hour. Passenger automobiles may be operated at such speeds as shall be consistent at all times with safety and the proper use of the roads. * * *"

■ The court evidently proceeded on the theory that the word "truck" is restricted by specific definition contained in Section 1, Act of March, 15, 1933, Chapter 169, Session Laws New Mexico 1933 (Section 11-301, Title I, Chapter 11, Article 3, *Registration*, page 74, New Mexico Supplement, 1938, *"Definition of Terms"*), amending Section 1, Chapter 119, Laws of 1929, as amended by Section 2, Chapter 77 of the Laws of 1931, otherwise known and designated as Section 11-301, New Mexico Statutes Annotated, 1929 Compilation.[2]

---

2 As amended it reads as follows:

"Definitions. The following words and phrases *when used in this Act shall, for the purpose of this Act, have the meanings respectively ascribed to them in this section,* except in those instances where the context clearly indicates a different meaning.

\* \* \* \* \* \*

"(y) 'Truck.'

"Every device in, upon or by which any property is, or may be transported or drawn upon a public highway which is self propelled, excepting devices moved by human power, or used exclusively upon stationary rails or tracks, having a load capacity of one thousand pounds or over.

"(z) 'Pleasure Car.'

"Any vehicle not defined herein shall be known as a pleasure car.

"An act relating to the *registration* of motor vehicles, trailers and semi-trailers and providing that when the *registration fees fixed by this Act are paid such vehicles shall not be assessed upon the property tax rolls.* (Approved March 12, 1929.) L. '33, Ch. 169, Section 1, amending Comp. '29, Section 11-301, as amended by L. '31, Ch. 77, Section 2." (Italics supplied.)

Section 1 of Chapter 169, Session Laws New Mexico 1933, page 419, Act of March 15, 1933, amended, Section 1 of Chapter 119, Session Laws New Mexico 1929, amended by Section 2, Chapter 77, Session Laws New Mexico 1931, otherwise known and designated as Section 11-301, New Mexico Statutes Annotated, 1929 Compilation, as follows:

"Definitions. The following words and phrases when used in this Act shall, *for the purpose of this Act,* have the meanings respectively ascribed to them in this section, except in those instances where the context clearly indicates a different meaning. [Italics supplied.]

"(a) 'Vehicle.'

"Every device in, upon or by which any person or property is, or may be transported or drawn upon a public highway, excepting devices moved by human power, or used exclusively upon stationary rails or tracks.

"(b) 'Motor Vehicle.'

"Every vehicle, as herein defined, which is self-propelled.

\* \* \* \* \* \*

"(y) 'Truck.'

"Every device in, upon or by which any property is, or may be transported or drawn upon a public highway which is self propelled, excepting devices moved by human power, or used exclusively upon stationary rails or tracks, having a load capacity of one thousand pounds or over.

"(z) 'Pleasure car.'

"Any vehicle not defined herein shall be known as a pleasure car.

"*An act relating to the registration of motor vehicles, trailers and semi-trailers and providing that when the registration fees fixed by this Act are paid such vehicles shall not be assessed upon the property tax rolls.*" [Italics supplied.]

Section 1 of Act of March 18, 1931, Chapter 77, entitled an act to amend Section 5 of Article 1 of Chapter 11 (also

The Supreme Court of New Mexico appears not to have passed on the question as to whether said Section 11-401, New Mexico Annotated Statutes, 1929, is so restricted in meaning.

Reaching the conclusion that Sub-division "y" of the Act of March 15, 1933, Chapter 169 of the Session Laws of New Mexico, related only to the registration of motor vehicles, etc., and in no way to speed, safety or the rules of the road, and did not have the effect of restricting said Section 11-401 (11-804 [b]) as to speed and safety, if the intestate was operating the truck at a speed greater than 45 miles per hour and the jury had so found under proper instructions, that constituting negligence per se on his part, the burden then would have been shifted to plaintiff to show that such speed was not a contributing cause to the injury in order to recover.

It was, under the laws of New Mexico, within the discretion of the trial court as to whether special interrogatories should be submitted to the jury. The court had ex mero moto submitted to the jury the special interrogatory, "Did the speed at which deceased was driving contribute as a proximate cause to such collision and the resulting death of deceased?", but the jury was in no way instructed that if the truck was driven in excess of 45 miles per hour that that constituted negligence per

se, (Pettes v. Jones, 41 N.M. 167, 66 P.2d 967, 971; Bell v. Carter Tobacco Co., 41 N.M. 513, 71 P.2d 683; Melkusch v. Victor American Fuel Co., 21 N. M. 396, 155 P. 727, 729[3]), and that if such violation of the safety statute by operating the truck at a speed greater than 45 miles per hour was established, same constituting negligence per se, the presumption would follow that such negligence was a proximate and contributing cause of the collision and the resulting injury, and the burden then would shift to the plaintiff to show that such violation was not a contributing cause. No specific request for such instructions was made, except as may be contained in requested instruction No. 11, and implied in the request as to submission of the special interrogatory, as to the shifting of the burden, with exception reserved as to failure to so instruct. Blashfield's Cyc. of Automobile Law and Practice, Vol. 9, § 6130; Steele v. Fuller, 104 Vt. 303, 158 A. 666; Moore v. Hart, 171 Ky. 725, 188 S.W. 861; Utilities Appliance Co. v. Toon's Adm'r, 241 Ky. 823, 45 S.W.2d 478; Martin v. Herzog, 228 N.Y. 164, 126 N.E. 814; and Pettes v. Jones, supra.

Evidence introduced and not controverted was that the pickup was a truck, and used as such, it being controverted as to whether intestate was driving in excess of 45 miles per hour. Requested instruc-

---

designated and known as Section 11-105) New Mexico Statutes, Annotated, 1929 Compilation Subsection W of Section 1 of Article 3 of Chapter 11 (also designated and known as sub-section W of Section 11-301) New Mexico Statutes, Annotated, 1929 Compilation and Sections 17, 22, 28 and 31 of Article 3 of Chapter 11 (also designated and known as Sections 11-317, 11-322, 11-328 and 11-331) New Mexico Statutes, Annotated, 1929 Compilation, *Relating to Motor Vehicle Registration Fees*, (Italics supplied), Section 7 thereof is as follows:

"This Act shall be effective for all registrations for the year 1932 and thereafter."

The title of said act of March 12, 1929, (Laws 1929, Chapter 119, H.B. 297) is as follows:

"*An Act Relating to the Registration of Motor Vehicles, Trailers and Semi-Trailers and Providing That when the Registration Fees Fixed By This Act Are Paid Such Vehicles Shall Not Be Assessed Upon the Property Tax Rolls.*" (Italics supplied.)

3 Southern Pacific Co. v. Humphrey, 9 Cir., 97 F.2d 29; Morris v. Pacific Electric R. Co. et al., 2 Cal.2d 764, 43 P.2d 276; Id., Cal.App., 27 P.2d 936; Soda v. Marriott, 118 Cal.App. 635, 5 P.2d 675; Id., 130 Cal.App. 589, 20 P.2d 758; Collins v. Kamper, Mo.App., 272 S.W. 1053; Lucedale Automobile Co. et al. v. Daughdrill, 154 Miss. 707, 123 So. 871; Norfleet v. Hall, 204 N.C. 573, 169 S.E. 143; Godfrey v. Queen City Coach Co., 201 N.C. 264, 159 S.E. 412, 413; Dickey v. Atlantic Coast Line R. Co., 196 N.C. 726, 147 S.E. 15; Ledbetter v. English, 166 N.C. 125, 81 S.E. 1066; Schell v. Du Bois, 94 Ohio St. 93, 113 N.E. 664, L.R.A.1917A, 710; Becher v. Spencer et al., 114 W.Va. 75, 170 S.E. 900; Awbrey v. Johnson, 45 Ga.App. 663, 165 S.E. 846; Pietrycka v. Simolan, 98 Conn. 490, 120 A. 310; Anderson v. Kinnear, 80 Wash. 638, 141 P. 1151; Stubbs et ux. v. Allen et al., 168 Wash. 156, 10 P.2d 983; O'Connor et al. v. Sinykin et al., 162 Minn. 382, 202 N.W. 891; Schawe v. Leyendecker, Tex.Civ.App., 269 S.W. 864; Herman Hale Lumber Co. v. Belser, Tex.Civ.App., 30 S.W.2d 409.

tion (No. 11) should have been given, said Section 1, Chapter 169, Session Laws New Mexico 1933, not having the effect of restricting said Section 11-401, New Mexico Annotated Statutes 1929, supra (11-804 b, Supp. 1938), as to safety and speed.

As to whether the special interrogatory submitted, as answered by the jury, cured error in refusing to give instruction No. 11, the court in the general instructions charged that: "The defense interposed in this case by the defendant is the contributory negligence of the deceased. This is an affirmative defense, and the defendant must prove such negligence of the deceased by the greater weight or preponderance of the evidence in the case before the Jury can find against the plaintiff on that defense, and in this action."

The court further instructed the jury that the plaintiff was required by law to establish her case by a preponderance of the evidence before she could recover, and that the affirmative defense interposed as to contributory negligence by the defendant must be proved by defendant by preponderance of the evidence in the case before the jury could find against the plaintiff on that defense, and "* *· * that the deceased to have been contributorily negligent so as to defeat a recovery against the defendant, if the Jury finds defendant negligent, as defined in other instructions herein, must have done some act that contributed directly to said collision, or failed to do some act which if he had acted would have avoided the collision, and that because of such act, if any, or failure to act, if any, the deceased thereby contributed to said collision, and the same was a proximate cause of his death," and that "* * * the law places upon all persons of mature judgment the duty of exercising reasonable care to avoid injury, and even though the Jury should believe from the evidence that defendant was guilty of some wrongful, negligent or unlawful act, but for which the collision resulting in deceased's death would not have occurred, still, if you also believe from the evidence that the collision would have been avoided by the exercise of ordinary care on the part of the deceased, and that the deceased did not exercise such care, your verdict should be for the defendant. In other words, Gentlemen, if you believe from the evidence that the deceased was driving the car in which he was riding in a reckless manner, or without due care and circumspection, or at a speed not consistent with safety and the proper use of the road, under all the circumstances existing at the time, or was not keeping a proper lookout, and as a result thereof himself negligently contributed to the accident resulting in his death, the deceased was guilty of contributory negligence, and your verdict should be for the defendant," and that "* * * one driving an automobile on the public highway in the night time has the right to presume that another will not park a truck upon or across the highway in an unlawful manner, or without flares placed by it as required by law; however, this right does not absolve one from the duty to at all times exercise ordinary care and caution as that term is herein defined," and that "* * * by a preponderance of the evidence is meant the weight of the evidence; that judged on the whole evidence, when fully, fairly and impartially considered by you, produces the stronger impression upon the minds of the Jury, and is more convincing when weighed against the evidence offered in opposition thereto, and it may, or may not, mean the number of witnesses that may testify upon any disputed fact in the case."

Nowhere in the instructions does the court inform the jury that a speed in excess of 45 miles per hour was negligence per se, and that if they found the intestate was driving in excess of that speed that that operated as negligence per se, under the affirmative plea of contributory negligence on the part of defendant.

The jury not having been advised by the court that greater speed than 45 miles per hour was excessive, constituting negligence per se, in answering the submitted interrogatory by fair intendment under all the instructions, reasonably understood that the burden of proof continued on the defendant to show that intestate was driving at such a speed as was not consistent with safety and the proper use of the road, at no time being advised so that they would understand that such burden, if they found the speed was in excess of 45 miles per hour, then shifted to plaintiff, to be so considered in reaching a finding as to what was the proximate cause of such collision and resulting death of the deceased.

Can we reasonably conclude that the submission of the interrogatory "Did the speed at which deceased was driving contribute as a proximate cause to such collision and the resulting death of the deceas-

ed?", being answered "No", eliminates the error on account of the jury not having been given an instruction as to shifting of burden of proof in event of defendant driving in excess of 45 miles per hour on ground of failure to reserve specific exceptions relative thereto, especially as the record discloses that the court ruled that the statute against operating a truck in excess of 45 miles per hour did not apply in the instant case, and such failure to so instruct the jury was not in inadvertence, the court specifically holding that said speed statute as to greater speed than 45 miles per hour under the record had no application to the pickup. Under such interpretation as to said speed or safety statute in relation to a pickup, as the case was submitted to the jury, no occasion arose for consideration of the jury as to excess of speed of 45 miles per hour as a matter of law constituting negligence per se.

As to what the jury considered in answering the submitted interrogatory as to such matter and proximate cause, we are not permitted to conjecture as to error being cured under the status of this record.

The judgment of the lower court is reversed and the cause is remanded for a new trial.