JOBRON *v.* WHATLEY

No. 43178 November 2, 1964 168 So. 2d 279

*Crisler, Crisler & Bowling,* Jackson, for appellant.

*Lipscomb* & *Barksdale,* Jackson, for appellee.

BRADY, TOM P., J.

This is an appeal from the Circuit Court of the First Judicial District of Hinds County, Mississippi, wherein the appellant, plaintiff below, brought suit against the appellee, defendant below, on account of injuries received in an automobile which appellee was driving on July 27, 1962 when it collided with a car being driven by Professor M. C. White, now deceased.

At the conclusion of the appellant's testimony, the lower court granted the appellee a peremptory instruction on the theory that the appellant had wholly failed to make an issue of negligence for the jury. It is the contention of the appellant that this action of the court below was error and that the testimony offered by the appellant presented at least an issue of contributory negligence on the part of the appellee which should have been submitted to the jury for determination.

The facts in this case are brief and clear. On July 27, 1962, at approximately five or five-thirty in the afternoon, the appellant was a guest in a Volkswagen convertible automobile, the top of which was down, being driven by appellee, Lana Whatley. There were four girls occupying the car at the time, all of whom were fifteen years of age. The appellant was seated on the left, in the rear seat of the automobile. The appellee was driving the Volkswagen down King's Highway, in the city of Jackson, and was proceeding in a north, northeasterly direction. The vehicle with which the Volkswagen collided was a 1957 Chevrolet, driven by Dr. M. C. White, a professor, in a westerly direction on Naples Road. King's Highway intersects Naples Road, which runs east and west. The picture offered in evidence of this intersection show accurately and clearly the general visibility from various points around the intersection.

The record further discloses that a former lawsuit of appellant against Dr. White had been settled by the payment of the sum of $42,500 to appellant, and that in said settlement all rights were reserved against all persons other than Dr. White and his insurer, the Utica Mutual Insurance Company. Only these two parties were released. Insofar as this case is concerned, it can be admitted that Dr. White was guilty of negligence in that he failed to stop his vehicle in obedience to a stop sign on Naples Road. Appellant contends, however, that the appellee was also guilty of negligence and, as alleged in the declaration, that she was not keeping a reasonable lookout, that she did not keep her vehicle under proper control, that she failed to reduce the speed of her vehicle prior to entering the intersection and, finally, that the appellee failed to take proper measures to control her car after she saw the other car approaching, and proceeding into the intersection.

There were five witnesses, including the appellant, who testified in behalf of appellant. That the declaration states a cause of action against the appellee is borne

out by the fact that no demurrer was filed to the declaration by the appellee. The cause reaches us on an assignment of two errors: One, that the court erred in sustaining appellee's motion for a peremptory instruction and in directing the verdict for appellee; and two, that the lower court erred in refusing to submit the case to a jury. Both of these errors can be considered and disposed of at the same time.

It is to be noted that only three witnesses, the appellee, as an adverse witness, Charles P. Williams, the investigating officer, and Linda Jobron, the appellant, testified as to why or how the accident occurred. The photographer, Marvin L. Pruitt, testified only as to the exhibits, which were six photographs of the intersection and streets leading thereto. The last witness was Sammy Jobron, the father of appellant, who testified with reference to her pain and suffering and somewhat as to the nature of her injuries.

■■■ ■ The question presented to this Court for consideration is simply whether or not, under the allegations of the declaration, the proof offered by appellant established an issue of fact showing that the appellee was guilty of any negligence which was a contributing cause of the accident. This Court is required to consider everything that has been offered in evidence which would tend to establish, directly or by reasonable inference, any negligence charged against the appellee. We are permitted, under former decisions, to take as true the evidence for appellant and all reasonable inferences which can be properly drawn therefrom. This rule, which has been repeatedly affirmed, is announced in West v. Armstrong, 159 So. 2d 805 (Miss. 1964); Mississippi Power & Light Co. v. Walters, 158 So. 2d 2 (Miss. 1963); and Russell v. Mississippi Cent. R. R., 239 Miss. 741, 125 So. 2d 283 (1960).

The photographs offered in evidence and the testimony of the witnesses indicate that King's Highway in-

tersects Naples Road in a residential section of the city of Jackson, Mississippi; that looking north on King's Highway, in the northbound lane thereof, the intersection can be seen clearly at a distance of at least 118 feet south of Naples Road; that 60 feet south of the intersection of Naples Road and King's Highway a person looking to the right could see several hundred feet east on Naples Road, the direction from which the said Dr. White was approaching. The third photograph, which is of a location 30 feet south of Naples Road on King's Highway, clearly reveals that a car coming west on Naples Road could be seen by appellee for a distance of several hundred feet prior to reaching the intersection. The sixth photograph shows that the street on which appellee was driving her car was slightly downhill. Appellee testified she was driving the Volkswagen approximately twenty-five miles an hour as she approached the intersection; that when she first saw the automobile driven by Dr. White it was approximately as far from the intersection as she was. She stated also that before they entered the intersection someone made the remark that Johnny Stevens' car was approaching. This remark was made because his car was the same color and model as Dr. White's, and that called her attention to the car. Appellee further testified that she assumed that she had the right of way. She testified further that the car driven by Dr. White never did slow down, and that she did not put her foot upon the brake of the car. She testified further that she was going downhill into the intersection. She testified that possibly the car she was driving slowed down one or two miles as she was approaching the intersection. The record discloses that she blew her horn immediately before the impact or collision; that prior to that time she had not blown her horn or had not done anything except to observe the car approaching at approximately the same speed and approximately the same distance from the inter-

section that she was at the time she was approaching the intersection. There is a slight discrepancy in her testimony in that the appellee formerly had testified as an adverse witness, on direct examination, that when she first saw Dr. White's car there was time for one of the girls to remark, ''There comes Johnny Stevens.'' This is in conflict with the statement she made, on cross examination by her attorney, ''when I blew my horn in the intersection it was just instantly when we saw the car, someone screamed 'A car — somebody's going to hit us' . . .''

Officer Williams' testimony shows that the Chevrolet car driven by Dr. White had skidded twenty-four feet prior to the point of collision; that he skidded twelve feet before he entered the intersection, and twelve feet afterward. He testified further that the Volkswagen had left no tire marks prior to the collision and that the Chevrolet had skidded around backwards and ended up in the front of the lawn. Officer Williams further testified that after the collision and from the point of impact, the Volkswagen traveled seventy-two feet north and ended up on the lawn of the house at the northwest corner of the intersection.

If the motion for the directed verdict required by the peremptory instruction is well taken, then there should not be any testimony in this cause on behalf of the appellant which would show conclusively, or by natural inference, that the driver of the car in which appellant was riding was guilty of any negligence which proximately caused or proximately contributed to the collision. If, on the other hand, there is sufficient evidence offered in behalf of the appellant to show that the driver of the car in which the appellant was riding as a guest was guilty of some negligence that proximately contributed to the collision, then that question of fact should have been submitted to the jury. If the evidence establishing negligence on appellee's part is controverted

by the testimony of the appellee, who was placed upon the witness stand as an adverse witness, or if the physical facts placed this testimony in dispute, then these issues of fact were for determination by the jury.

Turning to the pertinent testimony offered by the appellant, we find that the fifteen year old girls had been riding around in the car driven by the appellee for some thirty to forty-five minutes; that at the time the car approached the intersection it was going approximately thirty miles per hour. The appellant testified further that she saw the car at about the time the car in which she was riding reached the intersection, and that the other car was moving toward the intersection at that time. The appellant testified further that the appellee gave no indication to her that she ever saw the other car prior to the collision. She testified further that the appellee did not blow the horn prior to the collision except immediately before the impact, and that she did not slow the car down prior to the collision. On cross examination the appellant reaffirmed her testimony with reference to the appellee failing to slow the vehicle at any time, but qualified it to the extent that maybe it had been slowed two or three miles, which would not be ''noticeable''.

Turning now to the testimony of the appellee to see if there was any corroboration or contradiction of the testimony of the appellant, we find that the appellee testified that she was driving the Volkswagen car owned by her sister; that she and the other girls had just been riding around. She testified that she was driving approximately twenty-five miles per hour as she approached the intersection, but that it could be a difference of one or two miles either way. The appellee testified that when she first saw the car driven by Dr. White it was about as far from the intersection as they were, and at that time someone made the remark, ''There's Johnny Stevens' car,'' because he had the same color and model

car as that of Dr. White and "that called my attention to the car", and that this was before they entered the intersection. The appellee testified further that the car being driven by Dr. White was approaching the intersection at approximately the same speed as the appellee's car and that she assumed she had the right of way. Appellee testified further that Dr. White's car never did slow down; that she blew her horn after she got into the intersection and relized that the car which she was driving was going to be struck by the car which Dr. White was driving. She testified further that at no time did she put her foot on the brake peddle of the car, and that she was traveling downhill as she went into the intersection.

Turning to the evidence which is revealed by the photographs, we find that the appellee was able to see several hundred feet east on Naples Road at a time when she was within sixty feet south of the intersection of these two streets. At said point it is apparent that the other vehicle was approximately the same distance from the intersection as was the car driven by the appellee, and that both were approaching the intersection at approximately the same speed.

It appears to us that questions of negligence are raised by the testimony of the appellee in this regard. It is a question of whether or not she should have applied her brakes when she saw the car approaching the intersection at approximately the same speed she was traveling and at approximately the same distance. Certainly it would be a question for the jury to determine, whether or not the appellee was guilty of negligence in failing to use her brakes and slow her vehicle down so that, when it appeared Dr. White was not going to obey the stop sign and bring his vehicle to a stop, she would have had her vehicle under control and would have been able to avoid the collision. The record shows that she saw the vehicle in time to take precautionary

measures, by slowing the car down, by blowing the horn, or by turning the vehicle to the right or left, so that when Dr. White did not reduce his speed, or did not stop for the stop sign, she could still be able to avoid the collision of the two automobiles. The proof shows that she never did apply her brakes or attempt to stop the car at all; her statement is to this effect and, too, there were no corresponding skid marks put down on the street by her car. We cannot say a reasonable inference could not have been drawn from the evidence in this case, that when the appellee saw the other car about to enter the intersection approximately the same distance away and traveling about the same speed, that the appellee at that point could reasonably have seen that the other driver was not making any attempt to stop at the stop sign and probably would not be able to do so. The stop sign is located several feet east of the intersection and the skid marks made by the White car were put down on the intersection only twelve feet therefrom, and the twelve feet are east of the intersection, which is also proof that Dr. White did not attempt to stop his car until he was at least twelve feet on the east side of the intersection. It is obvious that no effort was made by Dr. White to stop his car until he was within a short distance of the intersection, possibly not until he reached the stop sign. It cannot be doubted that the appellee could and did see such a failure on the part of Dr. White, because the White car, if she had been looking at it, was still in her view and had been in her view for several hundred feet. Furthermore, appellant failed to make any effort to slow her vehicle from the speed at which she was traveling, which resulted in her car moving a distance of seventy-two feet across the intersection, over the curb, and into the yard on the northwest cornor of the intersection, after the collision. It is therefore a reasonable inference that, as the appellee approached the intersection, she saw the

other car approaching at about the same speed and about the same distance away, and the appellee made no effort to slow her car down, to give any warning signals, or to bring her car to a stop. At no time did she attempt to turn her car from the direct course it was traveling or to do anything in the operation of the car to avoid the collision, except to blow her horn immediately before the impact.

 █ The testimony in this case indicates that the appellee assumed that she had the right of way, and she assumed further that Dr. White would come to the stop sign and stop, and that she could travel across in complete safety. This assumption, together with the admitted facts, also permits the inference; that the appellee was actually not keeping a proper lookout at the intersection is a question for determination by the jury; she glanced or looked at the car when her attention was called to it, but thereafter she wholly failed to watch the approach of the car, because she failed to slow down, she failed to blow her horn, she failed to apply the brakes, she failed to turn her car, she failed to do anything except to proceed across the highway, blowing her horn only immediately before the instant of the impact. These facts, coupled with the additional fact that the appellant testified that the appellee gave no indication that she ever saw the car prior to the accident, make it clear that the appellee could have seen the other car had she looked. Appellee testified partially, on the other hand, that she did see the other car. This is conflicting testimony between the appellant and the appellee, and it is upon a material and pertinent question of negligence. This question of negligence should have been submitted to the jury; it alone would be in a position to decide, under the facts as outlined, whether or not the appellee was keeping a proper lookout at the time of the accident or immediately prior thereto, whether or not the appellee was traveling at a rate of speed which was danger-

ous under the circumstances, or whether or not it was negligence on the part of the appellee not to blow her horn sooner or to slow her car down in order to stop. The fact that the appellee's car went a distance of seventy-two feet after the collision is a factor to be considered in determining whether or not, under the circumstances, the appellee was traveling at a proper and reasonable speed in the safe operation of the automobile, and had the car under control. West v. Armstrong, 159 So. 2d 805 (Miss. 1964); Mississippi Power & Light Co. v. Walters, 158 So. 2d 2 (Miss. 1963); Hawkins v. Hillman, 149 So. 2d 17 (Miss. 1963); Russell v. Mississippi Cent. R. R., 239 Miss. 741, 125 So. 2d 283 (1960); Ulmer v. Pistole, 115 Miss. 485, 76 So. 2d 522 (1917); Miss. Code Ann. sec. 1455 (1956).

Appellee urges that there was no indication that Dr. White was going to enter the intersection without stopping; that he was not traveling at such a rate of speed as would indicate he was going to run the stop sign. In this conclusion we cannot concur. When Dr. White's car was three hundred feet away and traveling thirty miles an hour, it may be safely said that there was no indication then that he would drive into the intersection without stopping, but each foot that his car and the appellee's car approached the intersection at a speed of thirty miles per hour, respectively, the indication that he would not stop came into being and increased in reality. Each second, Dr. White's car, moving at this rate of speed, which the record shows he maintained until he applied his brakes, was traveling forty-four feet toward the intersection. In six seconds his car had traveled two hundred and sixty-four feet, and as yet the brakes of his car had not been applied or the speed reduced, and at this distance, and certainly one second later, there was not only an alarming positive indication that he was not going to stop, but also an obviously dangerous probability that he could not stop his car before

entering the intersection. This great impending danger was either not realized or not seen by not only the teen-age appellee, but also her teenage companions, until too late to avoid the collision.

This failure on the part of the appellee, if the jury so believed, would constitute negligence on appellee's part which proximately contributed to the collision. Appellant should have been permitted to present this factual question of negligence to the jury for determination.

█ █ Insofar as the appellee's having the right of way, or the right to assume that the driver of the other car would stop his car before entering the intersection, is concerned, this Court has repeatedly stated what the rule is, namely: That the motorist's right to assume that the driver of a vehicle proceeding toward an intersection will obey the law of the road, which requires him to stop before entering the intersection, exists only until he knows or in the exercise of ordinary care should know otherwise. The appellee herein testified with reference thereto as follows:

"Q. And I take it you assumed you had the right of way as you started on through the intersection, is that right?

"A. Yes, sir.

"Q. And the other car never did slow down, did it, to your knowledge?

"A. Not to my knowledge, I couldn't say."

█ █ The assumption indulged in by the appellee ceased to be available to the appellee the moment she saw, or in the exercise of due care should have seen, that the car driven by Dr. White was not going to slow down and stop at the intersection, or do anything to avoid the danger until it was too late. Whether the appellee abused her right to the assumption by not exercising due care to see that Dr. White was not going too slow down and stop, and thus be able to keep her car under such control as was necessary, is a question

of fact for consideration by the jury, in determining whether the appellee was guilty of negligence which proximately contributed to the collision. Dame v. Estes, 233 Miss. 315, 101 So. 2d 644 (1958); Harris v. McCuiston, 217 Miss. 601, 64 So. 2d 692 (1953); Rawlings v. Inglebritzen, 211 Miss. 760, 52 So. 2d 630 (1951).

Appellee cites, among other cases, the following: Illinois Cent. R. R. v. Smith, 243 Miss. 766, 140 So. 2d 856 (1962); Myrick v. Holifield, 240 Miss. 106, 126 So. 2d 508 (1961); and Whatley v. Boolas, 180 Miss. 372, 177 So. 1 (1937). While stating sound principles of law, nevertheless these cases are factually distinguishable from the case at bar.

The rule of law as announced in Hawkins v. Hillman, *supra,* is more analogous and applicable, under the facts therein, to the case at bar. From the foregoing, therefore, this cause is reversed and remanded for a new trial on the merits.

Reversed and remanded.

*Kyle, P. J., and Ethridge, Gillespie and Patterson, JJ.,* concur.