863 So.2d 1027 (2004)
Melinda Jo CLARK, Individually and Melinda Jo Clark as Next Friend and Mother of Kayla Logan Clark and Alora Morgan Clark, Appellants,
v.
Joseph L. CLARK and B & B Concrete, Inc., Appellees.
No. 2002-CA-01454-COA.
Court of Appeals of Mississippi.
January 20, 2004.
*1028 Will R. Ford, New Albany, attorney for appellants.
Franklin Williams, attorney for appellees.
Before SOUTHWICK, P.J., MYERS and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. On October 1, 1999, Melinda Clark and her daughters, Kayla and Morgan Clark, were traveling east on Highway 4 in Ripley, Mississippi. As they approached the intersection of Highway 4 and Line Street, a car being driven by Joseph Clark pulled out in front of them and an accident occurred. Melinda Clark filed a negligence suit against Joseph and his employer B & B Concrete, Inc. in the Tippah County Circuit Court. A jury verdict was returned in favor of the defendants. Feeling aggrieved with the verdict, Clark appeals and cites the following errors:
I. THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR DIRECTED VERDICT AS TO THE ISSUE OF NEGLIGENCE.
II. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' INSTRUCTION D-2 AND D-4.
¶ 2. Finding that the trial court reached the correct decision regarding these issues, we affirm.

FACTS
¶ 3. On October 1, 1999, Melinda Clark (Melinda) and her children Morgan and Kayla Clark, were traveling East on Highway 4 and were involved in a collision with a B & B, Inc. mixer truck which was being driven by Joseph Clark (Jody). The accident occurred at the intersection of Highway 4 and Line Street in Ripley, Mississippi. The traffic on Line Street is controlled by opposing stop signs. Jody was going north on Line Street and attempting to cross Highway 4 when the accident occurred.
¶ 4. Traffic was heavy on the morning of the accident. According to Jody's testimony, he pulled up to the intersection of Line Street and Highway 4 and checked for oncoming traffic. Jody allowed a couple of cars to pass. However, his vision was blocked to the left, or west, by overgrown bushes, shrubs and trees. In order to get a better view of oncoming traffic, he cautiously eased the mixer truck forward about a foot just as Melinda was passing through the intersection. The impact between the two vehicles occurred along the *1029 front of the mixer truck and the right side of Melinda's car. Melinda's car was hurled into an iron post supporting the porch of a store located at the intersection.
¶ 5. Jody claims that he did not see Melinda's car approaching the intersection prior to the accident. Melinda testified that she could not see the mixer truck sitting at the stop sign because it was hidden behind overgrowth that was situated around the intersection.
¶ 6. Brenda White witnessed the accident from the opposite side of Highway 4. She was headed south on Line Street, and from her view she could see Jody stopped at the opposing stop sign waiting for traffic to subside. White acknowledged Jody's presence by waving at him. White testified that Jody came to a full stop and then slowly eased his truck onto the highway in an effort to see past the overgrown bushes. The front bumper of Jody's truck was positioned just past the overgrown bushes when the accident occurred. White testified that Line Street was narrow and that its intersection at Highway 4 is very dangerous.
¶ 7. Melinda was traveling east on Highway 4 at the time of the accident. The posted speed limit on Highway 4, at this location, is thirty-five miles per hour. Melinda testified that she was not speeding and that she did not slow her car down as she approached the intersection.
¶ 8. On June 28, 2000, suit was filed in Tippah County Circuit Court, and the case was tried on February 5, 2002. During the consideration of jury instructions, the defendants offered contributory and comparative negligence jury instructions based on case law which holds that Melinda had a duty to slow the speed of her automobile when approaching an intersection. The trial court granted the jury instructions over the objections of the plaintiffs.
¶ 9. The plaintiffs moved for a directed verdict on the issue of negligence at the close of the evidence. The trial court denied the motion. The jury returned a verdict for Jody and B & B Concrete, Inc. Melinda's motion for a JNOV or, in the alternative, a new trial was denied by the trial court.
I. DID THE TRIAL COURT ERR IN DENYING THE PLAINTIFF'S MOTION FOR DIRECTED VERDICT AS TO THE ISSUE OF NEGLIGENCE?
¶ 10. On appeal, "the standard of review for denial of a judgment notwithstanding the verdict and a directed verdict are identical." Am. Fire Prot., Inc. v. Lewis, 653 So.2d 1387, 1390 (Miss.1995). See Sperry-New Holland v. Prestage, 617 So.2d 248, 252 (Miss.1993). Whether to grant a directed verdict is a decision of law. Fox v. Smith, 594 So.2d 596, 603 (Miss.1992). Mississippi Rule of Civil Procedure 50 provides:
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted without having reserved the right to do so and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds thereof. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
¶ 11. Melinda argues the evidence clearly establishes the negligence of Jody because he violated Mississippi Code Annotated Section 63-3-805, by willfully entering Highway 4 from the Line Street *1030 intersection at a time when Melinda's automobile constituted an immediate hazard. She argues the trial court committed error when it failed to grant her motion for a directed verdict on the issue of Jody's negligence. Jody asserts the trial court was correct in denying Melinda's motion for a directed verdict because she was in violation of Mississippi Code Annotated Section 63-3-505, when the accident occurred.
¶ 12. It is therefore necessary for the Court to turn its attention to the applicable traffic laws. Mississippi Code Annotated Section 63-3-805 (Supp.2003), provides, in its entirety:
The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway as to constitute an immediate hazard. However, said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceedings into or across the through highway. The driver of a vehicle shall likewise stop in obedience to a stop sign as required by this chapter at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed.
Mississippi Code Annotated Section 63-3-505 (Supp.2003), addresses the duty of a driver to reduce the speed of an automobile and it provides:
The driver or operator of any motor vehicle must decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic. All trucks, or truck-trailer combinations and passenger buses shall be required to reduce speed to forty-five miles per hour during inclement weather when visibility is bad.
¶ 13. The evidence presented at trial showed Melinda traveling east on Highway 4 when the accident occurred. Highway 4 is a through highway with no traffic control devices at the Line Street intersection. Line Street, upon which Jody was traveling due north, is not a through highway. It has stop signs posted at the entrance points to Highway 4.
¶ 14. Melinda contends that she was traveling the posted speed limit of thirty-five miles per hour when the accident occurred. However, she does admit that she did not decrease the speed of her automobile as she approached the Line Street intersection. Jody testified to pulling his mixer truck up to the stop sign on Line Street where he observed the heavy flow of traffic on Highway 4. Due to the overgrowth at the intersection, Jody's view was obstructed to the west on Highway 4. In order to get a better view of oncoming traffic, Jody cautiously eased the mixer truck into Highway 4 and the accident occurred.
¶ 15. Brenda White witnessed the accident and corroborated Jody's version of how the accident occurred. White testified that the intersection of Line Street and Highway 4 is dangerous. Prior to the accident, White and Jody were stopped in their automobiles and facing each other at the opposing signs on Line Street. White stated that Jody's truck slowly moved forward *1031 approximately one foot passed the stop sign into Highway 4.
¶ 16. Melinda testified that she could not see Jody's mixer truck as she approached the intersection due to overgrowth. Jody testified that he did not see Melinda's car as he moved his mixer truck into the highway. Both drivers were familiar with the intersection.
¶ 17. Applying the law as set forth in section 63-3-805, Jody was required to obey the stop sign on Line Street and then proceed onto the Highway 4 intersection only after yielding to automobiles that are approaching close enough to be considered an "immediate hazard." Melinda was required under Section 63-3-505 to decrease the speed of her vehicle when she approached the Line Street intersection.
¶ 18. Melinda directs the Court's attention to the holdings in McKinzie v. Coon, 656 So.2d 134 (Miss.1995) and Vines v. Windham, 606 So.2d 128 (Miss.1992). In McKinzie, the court reversed and rendered a jury verdict for the defendant on the issue of negligence after a turning driver admitted to entering a through highway and causing an accident. McKinzie, 656 So.2d at 142. Witnesses testified that the driver was not paying attention when he pulled out of the intersection into the highway. Id. at 136. In Vines, the supreme court reversed a jury verdict that found both parties negligent in a car accident where the defendant had an unobstructed view of oncoming traffic but pulled out in front of the plaintiff after another motorist on the highway made a hand signal for the defendant to cross over. Vines, 606 So.2d at 129.
¶ 19. Jody argues that Melinda had a duty to slow her automobile down when she approached the Line Street intersection. In Greyhound Lines, Inc. v. Sutton 765 So.2d 1269, 1273 (¶ 10) (Miss.2000), the court addressed the duty of a driver to decrease the speed of her automobile at an intersection. In Sutton, the driver ran a stop sign at an intersection and collided with a bus. Id. at 1271. Although the driver ran the stop sign, the supreme court found negligence on behalf of the bus driver due to his failure to slow his speed at the intersection. Id. The negligence of the driver who ran the stop sign was never in dispute. Id. The duty to decrease one's speed at an intersection is based on the standard delineated in Jobron v. Whatley, 250 Miss. 792, 804, 168 So.2d 279, 284 (1964), which states:
Insofar as the appellee's having the right of way, or the right to assume that the driver of the other car would stop his car before entering the intersection, is concerned, this Court has repeatedly stated what the rule is, namely: That the motorist's right to assume that the driver of a vehicle proceeding toward an intersection will obey the law of the road, which requires him to stop before entering the intersection, exists only until he knows or in the exercise of ordinary care should know otherwise.
¶ 20. Jobron involved a car that ran a stop sign and hit another car that had the right of way. Id. at 795, 168 So.2d 279. The passenger in the car that was hit filed suit against the driver who ran the stop sign and the driver who failed to keep a proper lookout. Id. The court held that "[c]ertainly it would be a question for the jury to determine, whether or not the appellee was guilty of negligence in failing to use her brakes and slow her vehicle down so that, when it appeared Dr. White was not going to obey the stop sign and bring his vehicle to a stop, she would have had her vehicle under control and would have been able to avoid the collision." Id. at 800, 168 So.2d 279. See also Richardson v. Adams, 223 So.2d 536 (Miss.1969) (whether person was negligent in her failure *1032 to further reduce speed when approaching an intersection was a question of fact for the jury); Shaw v. Phillips, 193 So.2d 717 (Miss.1967) (whether motorist approaching intersection was guilty of negligence which proximately caused or contributed to the accident was for the jury).
¶ 21. The cases cited by Melinda are factually distinguishable from the case sub judice. The drivers in McKinzie and Vines did not have obstructed views of oncoming traffic. Instead, each driver had a clear view of oncoming traffic but still chose to pull into the intersection causing a wreck. The negligence of each driver entering the through highway was never in dispute.
¶ 22. In this case, whether the actions of Jody at the intersection could be considered negligent was a question for the jury to decide. In Jones v. United States Fidelity and Guaranty Company, 822 So.2d 946, 948 (Miss.2002), the court wrote that "the violation of a statute demonstrates a duty and breach thereof, but not proximate cause of injury which is a question still left for the jury to answer. We therefore conclude that the requested instruction which would have directed a verdict in Jones's favor was properly denied." See also Richardson v. Adams, 223 So.2d 536 (Miss.1969).
¶ 23. The Court finds that Melinda's assignment of error is without merit. It is undisputed that both Melinda and Jody violated the applicable traffic laws on the day of the accident. Melinda failed to keep a proper look out as she approached the intersection. A reasonable person would recognize the need to slow her vehicle as she approached the intersection. Jody proceeded cautiously as he entered the through highway but was unable to avoid an accident. The negligence and reasonableness of Jody's actions was a question for the jury.
II. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' INSTRUCTION D-2 AND D-4.
¶ 24. When granting or refusing various jury instructions the court reads all instructions given as a whole. If the instructions fairly announce the law and no injustice is created then no reversible error will be found. Coleman v. State, 697 So.2d 777, 782 (Miss.1997); Collins v. State, 691 So.2d 918, 922 (Miss.1997). When the jury instructions do not fairly or adequately instruct the jury, we will reverse. Burton by Bradford v. Barnett, 615 So.2d 580, 583 (Miss.1993). The standard of review for considering the grant or denial of jury instructions are set forth in Hill v. Dunaway, 487 So.2d 807, 809 (Miss. 1986):
By analogy to our familiar test as to when any fact question may be taken from the jury, our rule is this: The refusal of a timely requested and correctly phrased jury instruction on a genuine issue of material fact is proper, only if the trial courtand this Court on appealcan say, taking the evidence in the light most favorable to the party requesting the instruction, and considering all reasonable favorable inferences which may be drawn from the evidence in favor of the requesting party, that no hypothetical, reasonable jury could find the facts in accordance with the theory of the requested instruction.
Id. See also Church v. Massey, 697 So.2d 407, 410 (Miss.1997)
¶ 25. Melinda's second assignment of error concerns Jury Instructions D2 and D4. Instruction D2 states:
You are instructed that the driver of a motor vehicle must decrease the speed of her vehicle when approaching and crossing an intersection. Therefore, if you find from a preponderance of the *1033 evidence that Melinda Jo Clark failed to decrease the speed of her vehicle upon approaching the intersection of Highway 4 (Ashland road) and South Line Street, then you may find that Melinda Jo Clark's failure to reduce her speed under those circumstances was negligent, and that such negligence caused or contributed to the accident, and you may reduce any damages awarded to the plaintiff Melinda Jo Clark consistent with other instructions given you.
¶ 26. Jury Instruction D4, requested by Jody, states:
If you find from a preponderance of the evidence in this case that:
1. Jody Clark, defendant, was negligent, and
2 Melinda Jo Clark was negligent, and
3. the negligence of both two drivers were proximate contributing causes of the accident in this case, and
4. the plaintiffs sustained injuries and damages caused by the combined negligence of Melinda Jo Clark and Jody Clark, then you will, in arriving at your verdict, first determine that sum of money, if any, which will fairly and adequate compensate plaintiffs for said injuries and damages, if any, and then you are to reduce this sum in proportion to the casual negligence of Melinda Jo Clark, using the following method:
1. determine the proportion that Melinda Jo Clark's casual negligence bears to the casual negligence as a whole, as a part or percentage of 100% (100% = total casual negligence of both actors in case).
2. multiply the sum of money you determined as plaintiff's damages by the percentage figure representing the proportion of Melinda Jo Clark's casual negligence;
3. then subtract the result of your multiplication from the sum you first determined to plaintiffs' damages; and
4. return a verdict for plaintiffs.
¶ 27. Melinda argues that Instructions D2 and D4 were improperly submitted to the jury because there was no evidence that she was negligent in any manner. She believes the jury was misled and the verdict should be set aside and a new trial granted solely on the issue of damages. Jody argues the jury instructions were proper because Melinda violated Section 63-3-505 which required her to slow when approaching an intersection.
¶ 28. We find that the issue of whether Melinda was negligent in her failure to decrease the speed of her automobile as she approached the intersection was for the jury to determine. Jody asserted that there was ample evidence to determine that he did not enter the Highway 4 intersection when it was unreasonable to do so. The jury was presented with both parties' version of events. The jury chose to believe Jody's version. The jury could properly decide that Jody was not negligent when he pulled his truck onto the highway to look for oncoming traffic. The facts of this particular case required the jury to make a determination on the degree of negligence that should be attributed to each party. There was undisputed evidence that Jody's view of oncoming traffic was obstructed by overgrowth. Likewise, Melinda admitted the overgrowth diminished her view, but that she did not slow her vehicle as she approached the intersection. It was within the realm of the jury to determine whether Melinda was negligent in her failure to slow the automobile. Therefore, the assignment of error is without merit.

¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF TIPPAH COUNTY *1034 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, AND MYERS, JJ., CONCUR. SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., IRVING AND GRIFFIS, JJ.
SOUTHWICK, P.J., concurring:
¶ 30. I write separately due to the continuing distortions caused by an antiquated statute on the duty of a driver on a through road.[1] That statute requires a driver to slow at every intersection. Whether applied to substantial intercity roads or smaller city streets, such a rule has little relevance to present day driving conditions. The rule was created in 1938. Using almost the same language as in the original, the present statute requires the following:
The driver or operator of any motor vehicle must decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding road, or when a special hazard exists with respect to pedestrians or other traffic.
Miss.Code Ann. § 63-3-505 (Rev.1996). An instruction was given the jury in this case that was based on the statute. The issue of negligence in intersection collisions should not be affected by an unrealistic and unreasonable statutory standard such as this.
¶ 31. The Supreme Court has within the limits of the statute attempted to inject some reality by holding that a person on a through road is "entitled to assume that crossing traffic will obey stop signs, look for oncoming vehicles" and otherwise yield. Vines v. Windham, 606 So.2d 128, 131 (Miss.1992). A different statute provides that once a person has stopped, he may enter onto the through street unless an approaching vehicle is so close as "to constitute an immediate hazard." Miss.Code Ann. § 63-3-805, quoted in McKinzie v. Coon, 656 So.2d 134, 138 (Miss.1995). After making a reasonable entry onto the through road, the driver from the side road gains the "right-of-way" even though initially that driver had to stop.
¶ 32. All of these rules must work together. They mean that someone on a through street is not exempt from normal operation of negligence principles. Being on the through road does not permit a driver to maintain a constant speed and smash into anyone who gets into his way who comes from a side street. However, what is not needed is a rule independent of reasonable care that requires the person on the through street to slow at all intersections. Since few if any drivers slow at every intersection nor does there appear a sound basis for doing so, this creates an artificial standard that skews fact-finding.
¶ 33. What the statute was intending to accomplish is clearer when viewing the original enactment. The statutory language under which we are now measuring negligence is the second-generation approach to speed restrictions. The first statute was referred to in one contemporary precedent as the "motor car speed *1035 statute." Lucedale Automobile Co. v. Daughdrill, 154 Miss. 707, 711, 123 So. 871, 872 (1929). That label helps date it. It set a variety of speed restrictions, including this:
No person shall operate a motor vehicle on a public highway ... at a greater rate of speed than is reasonable and proper, having due regard to the traffic and use of the highway, or so as to endanger the life or limb of any person or the safety of any property, or in any event on any public highway where the territory contiguous thereto is closely built up, at a greater rate of speed than fifteen miles per hour, or elsewhere in any incorporated city, town or village at a greater rate of speed than fifteen miles per hour, or elsewhere outside of any incorporated city, town or village at a greater rate of speed than thirty miles per hour, subject, however, to the other provisions of this act.
1916 Miss. Laws, ch. 116, § 2 (codified at Hemingway's Code 1927, § 6680). A provision that later evolved into the special hazard rule applicable here, stated that when "approaching a bridge, levee, sharp curve or steep descent, and also in traversing such bridge, levee, curve or descent, a person" shall not drive more than ten miles per hour, "and upon approaching a crossing of intersecting highways at a speed not greater than reasonable and proper, having due regard to the traffic then on such highway and the safety of the public." 1916 Miss. Laws, ch. 116 (codified at Hemingway's Code 1927, § 6682).
¶ 34. Sandwiched between these two sections and giving an instructive historical context for the provision from which the statute to be applied here soon evolved, was a rule that no motor vehicle "shall pass a person driving a horse or horses or other domestic animals, [or pedestrians], at a greater rate of speed than eight miles per hour...." 1916 Miss. Laws, ch. 116 (codified at Hemingway's Code 1927, § 6681).
¶ 35. The next generation of speed and safety statutes contained the language that is still being applied to accidents such as occurred here. It was one section of a lengthy set of measures adopted in 1938 called the "Uniform Highway Traffic Regulation Act":
(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing.
(b) Where no special hazard exists the following speeds shall be lawful but any speed in excess of said limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful:
1. Twenty miles per hour in any business district;
2. Twenty-five miles per hour in any resident district;
3. Fifty-five miles per hour under other conditions.
Provided however, the speed limit of trucks shall be forty miles per hour.
(c) The fact that the speed of the vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazards exist with respect to pedestrians or other traffic. ...
1938 Miss. Laws ch. 200, § 51 (emphasis added). As can be seen, the current language regarding slowing at intersections and while cresting hills and along winding roads all began in 1938.
*1036 ¶ 36. It is important to understand the condition of state highways when the 1938 slow-at-every-intersection rule was created. Mississippi then had about 6,200 miles in the state highway system: fewer than 3,500 miles were paved, 2,400 miles were gravel, and 350 miles were dirt. MISSISSIPPI STATE HIGHWAY DEPARTMENT, MISSISSIPPI HIGHWAY FACTS 13-14 (1942). Only an additional 320 miles of paved roads were maintained by counties, while 52,000 miles of gravel or dirt county roads existed; only 1,000 miles of federal highways were in the state. Id. at 13 & 16-17. Traveling these roads were 230,000 in-state vehicles. Id. at 23. The pavement was intermittent, as the first highway to be paved completely across the state had been open for less than a year. James B. Gibson, Huge Celebration Marks Formal Dedication for First All-Paved Highway, DAILY CLARION-LEDGER (Jackson, Miss.), April 8, 1937, at 1, 8. At the dedication of that highway, a speaker called on the 1938 legislature to enact "uniform safety legislation to govern traffic on the newly paved roads." Id. It is that long-ago legislature's response that largely still governs today.
¶ 37. In addition, it would appear that a statewide, systematic program of erecting stop signs and other warning devices also began or at least was accelerated with the 1938 Act.1938 Miss. Laws ch. 200, §§ 28-35. That suggests that many intersections were unmarked with any traffic control signs, which would make understandable that every vehicle should slow at every intersection. If no one has to stop, then everyone should at least slow down.
¶ 38. Equally revealing about road conditions is that two years before the 1938 statute, the governor said that his "sole desire [regarding roads] is to see that we are gotten out of the mud, dust and gravel as quickly as possible." Corey T. Lessig, "Out of the Mud": The Good Roads Crusade LX J. MISS. HIST. 50, 70 (1998). By 1998, Mississippi drivers were off the dirt and gravel with paved roads totaling almost 50,000 miles, not the 4,000 of 1938. MISSISSIPPI DEPARTMENT OF TRANSPORTATION, MISSISSIPPI PUBLIC ROADS: SELECTED STATISTICS iv-v (1998). Over 2,000,000 state-licensed vehicles used these roads, almost a ten-fold increase. MISSISSIPPI STATISTICAL ABSTRACT 365 (1997). Quite obviously the nature of highway travel in the state has changed radically and all the various parts of former absolute rules to slow for horses, hill crests, and highway crossings have become obsolete.
¶ 39. The supreme court has given some attention to the impracticalities of the rule but is still bound by the statutory language:
In order to be in violation of the statute one must fail to reduce his speed from the maximum provided when one of the conditions set out in [1942 Miss.Code § 8176(b) for slowing at intersections, curves, and hill crests] is present. In this case, Mrs. Adams was traveling at a speed less than the maximum as she approached the intersection and whether her failure to further reduce her speed under the prevailing circumstances was negligence was a question of fact for the jury to determine.
Richardson v. Adams, 223 So.2d 536, 538 (Miss.1969). The defendant in Adams was going 50-55 miles per hour, which was less than the maximum of 60. Therefore the failure to slow even more was at most a jury question regarding negligence. Whenever there is some evidence to support that a driver was going the maximum speed or more, the statutory duty to slow is invoked.
¶ 40. In the present case, even if this statute did not exist, a jury instruction would have been proper that asked whether Melinda Clark acted as a reasonably *1037 prudent driver as she approached the intersection at which this collision occurred. In the circumstances, which included considerable traffic on the road that she was traveling as well as on cross-streets, with an observable line of cars at the intersection trying to cross, and even with her potential knowledge of the obstructed view that was the reason that drivers eased slightly out into the east bound lane, prudence and non-negligence may well have required her to slow down, move in her lane away from traffic entering onto the through road, and otherwise become defensive in her driving. Instead, she may have blithely moved ahead at the speed limit and even stayed towards the right side of the lane where the concrete truck was slowly coming onto the through road. Jurors were entitled to conclude that Joseph Clark was not negligent in moving slightly into the right of way as he must in order to see, and that he could rely on the fact that any reasonable driver approaching as was Melinda Clark would see him and make the slight adjustment in travel that was required to avoid hitting him.
¶ 41. I find no error in the jury's conclusion that Melinda Clark caused the accident and Joseph Clark was without fault. The statute on slowing at every intersection is unnecessary to that conclusion, since the condition of this intersection required such caution. This obsolete statute fully served its purpose long ago and should legislatively be repealed because the usual negligence rules already focus on the requirement of reasonable care in driving. In most circumstances slowing at every intersection would not be part of the standard of care and should not be made so by statute. Something besides the mere existence of an intersection should be needed before the duty to slow is invoked. Something more than mere existence was involved in these facts.
¶ 42. The present rule can cause a finding of negligence when it does not exist and for blame to be shifted from where it belongs. No distortion occurred this time, however.
McMILLIN, C.J., IRVING AND GRIFFIS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] These views appeared in Greyhound Lines, Inc. v. Sutton, 753 So.2d 1105, 1120, 1124-25 (¶ ¶ 61-66) (Miss.Ct.App.1999) (Southwick, P.J., concurring; opinions withdrawn upon granting of writ of certiorari); aff'd in part, rev'd in part, 765 So.2d 1269 (Miss.2000). Omitted here is the discussion of the improper bringing of a personal injury action in chancery court even when no objection is raised. 753 So.2d at 1120-1123, ¶ ¶ 45-56.